Van Voorhis, J.
After a careful review of the evidence, we have concluded that the charges of professional misconduct against appellants have not been proved as matter of law with the exception of specification 7F. This specification charges that appellants accepted referrals of clients from tow car operators, automobile repair and service station operators, insurance brokers, doctors and others and thereby btirred up litigation. *178 Concerning this the Referee stated (report, p. 10) that respondents filed statements of retainer in 881 negligence cases from 1957 to 1961, of which number 122 were allegedly and admittedly referred to them by persons of the nature just described.
Edward Condra of Levittown, manager of Center Island Auto Body Shop of Levittown, referred to the law firm 22 clients listed in petitioner’s exhibit 78.
Sam Seibelli and Anthony Scibelli, doing business as Nassau Body So Fender Shop, referred 16 cases to appellants (ex. 76).
Steve Potash, doing business as S So P Motors, referred 28 to appellants (ex. 77).
Philip Abatelli, an insurance broker, referred 11 clients to the firm (ex. 75).
Doctor Samuel R. Sherman referred 13 clients to the firm (ex. 74; stenographer’s min., pp. 312-317).
Frank Scappatura, president of Scappy & Peck Auto Body Corp., Westbury, referred 8 clients to the firm (ex. 80; stenographer’s min., p. 394).
Frank Flood, an insurance broker, referred 6 clients to the firm (ex. 79; stenographer’s min., pp. 391-394).
These total 104. The Referee’s figure of 122 was evidently derived from treating separately husband, wife and children in instances where families were involved in accidents.
This evidence is sufficient, in the case of two lawyers who had been admitted to the Bar in 1954 and 1955, to establish prima facie a pattern of systematic solicitation of automobile negligence business by utilizing their relationship with these people as a cover for directing legal business to them (People v. Schneider, 20 A D 2d 408, 411). It was enough to put the burden upon them of coming forward with evidence sufficient to overcome such a presumption, and it was for the Appellate Division to determine the adequacy of their explanation as a question of fact. The other charges have not been proved as matter of law.
We think, however, that petitioner should be allowed further opportunity to establish specification 7D, which is that appellants made improper use of an investigator in obtaining retainer agreements, adverse party statements and execution of guardian ad litem forms. In this record the evidence fails to show that appellants’ lay investigator, to their knowledge, *179 obtained statements from adverse parties represented by other counsel, and the preparation and execution of guardian ad litem forms were approved by appellants before they were utilized. The same applies to the charge that the investigator was vested with authority to reject retainers and to determine the amount of appellants’ percentage fees. A lay person, as, for example, a stenographer in a law office, may prepare legal papers provided that they are approved by licensed attorneys before they are utilized, and this applied to whatever guardian ad litem forms this investigator prepared, or had executed, and likewise to the percentage fee agreements, which came to the attention of appellants and were approved by them before taking effect. These lawyers were not interested in rejecting negligence claims, large or small, which they thought could be collected on which they could obtain percentage fees, and, where the investigator told clients of appellants that their firm would not accept their cases, this was done by the direction of one of the firm members. This investigator, insofar as the proof shows, communicated with clients only after they had retained this law firm, and petitioner does not claim that there is evidence that he solicited these cases as such. Although specification 7D, as we view the record, is not sustained prima facie, the activities of this investigator are not clearly disclosed by the record and it may well be that further evidence is available with respect to his activities, perhaps on somewhat broadened charges.
The order appealed from should be reversed so as to dismiss all of the charges except specifications 7D and 7F, and the matter is remanded to the Appellate Division to impose whatever disciplinary measures may be appropriate with respect to specification 7F alone, except that a new trial or hearings are authorized with respect to specification 7D as presently stated or enlarged if petitioner be so advised so as to comprehend more extensively the activities of this investigator. Appellants should, of course, be given notice of any such broadened charges and of such further hearings as may be conducted in the premises, in which event the imposition of sanctions with respect to specification 7F may be postponed until the charge under 7D is disposed of.
*180 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Order reversed and matter remanded to the Appellate Division for further proceedings in accordance with the opinion herein, without costs.